IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| EMMETT HAWKINS,<br>    PLAINTIFF, | )<br>)<br>)<br>) |
| vs. | ) No. 2:09-cv-02024-SHM-dkv<br>) JURY TRIAL DEMANDED |
| MEMPHIS LIGHT, GAS<br>AND WATER DIVISION | )<br>)<br>) |
| DEFENDANT. | )<br>)<br>) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL
STATEMENT OF UNDISPUTED FACTS

COMES NOW pursuant to Local Rule 7.2(d)(2), Plaintiff files this response to Defendant's Statement of Material Facts and in opposition to the Defendant's Motion for Summary Judgment. Defendant has submitted a number of undisputed facts, but they are not dispositive nor are they complete. Plaintiff designates the following undisputed facts upon which he relies:

1. Mary Helen Lovett admitted during her deposition that her employees have complained that she is a racist. (Exhibit A, Lovett Depo. P. 23)

2. Ms. Lovett also admitted that employees have complained that she is discriminating against them. (Exhibit A, Lovett Depo. P. 27)

3. Prior to 2009, Ms. Lovett had never promoted a black to any position higher than Foreman. (Exhibit A, Lovett Depo. Pp. 29-30)

4. During Ms. Lovett's tenure 7 whites were allowed to act in a position higher than foreman and they all received those positions. (Exhibit A, Lovett Depo. P. 51)

1

5. During Ms. Lovett's tenure 1 black was allowed to act in a position higher than foreman and zero received the job. (Exhibit A, Lovett Depo. P. 51) Nancy Miller was allowed to act on two different occasions one for three months and one four months. (Exhibit A, Lovett Depo. P. 98)

6. Hawkins was only allowed to act once and it was during the time that Nancy Mitchison was still the Supervisor of Stores. Nancy Miller was allowed to act from September 05 until she was selected in May 06. Exhibit T, Hawkins Depo. P.50)

7. Whites received multiple promotions under Ms. Lovett for instance Willoughby, Brown, Dunahoo, Jones and Jackson received multiple promotions. (Exhibit A, Lovett Depo. Pp. 202-204, 217) No blacks received multiple promotions from Ms. Lovett.

8. The first time Mr. Hawkins competed for the position of supervisor of stores was in 2002. Ms. Lovett selected a white female by the name of Nancy Mitchison for the job. (Exhibit A, Lovett Depo. P. 66)

9. Ms. Mitchison was given an opportunity to act in the position of Supervisor for two years and Mr. Hawkins was not allowed to act. (Exhibit A, Lovett Depo. P. 66)

10. After an interview for the job of supervisor of stores in 2002, Mr. Hawkins scored higher than Ms. Mitchison during the interview process but could not obtain the job. (Exhibit A, Lovett Depo. P. 135)

11. Ms. Mitchison received the job as supervisor of stores because she possessed stronger initiative and self direction according to Ms. Lovett. (Exhibit A, Lovett Depo. P. 104)

12. Plaintiff was not chosen for the position of supervisor of stores in 2002. Ms. Lovett stated that even though Mr. Hawkins possessed extensive store experience, candidate has not proven leadership skills in daily operation. (Exhibit A, Lovett Depo. P. 104)

13. Mr. Hawkins' 2001 performance appraisal was for the year prior to the promotional process that was written by Nancy Mitchison, a competitor for the Supervisor of Stores and approved by Ms. Lovett stated Mr. Hawkins received next to the highest rating and it stated Emmett is supportive of division department objectives. He is consistent in carrying out duties and meeting challenges. (Exhibit A, Lovett Depo. P. 125)

14. Under leadership for the 4th quarter of 2001, Mr. Hawkins received next to the highest rating and it stated that Emmett dealt with some unusual challenges and was consistent and fair. He clearly communicated expectations. Overall rating P2, effectively adjusts

2

leadership style to fit the maturity level of his crews, employees. (Exhibit A, Lovett Depo. P. 127)

15. Mr. Hawkins' 2001 performance appraisal was signed 2 months after Mr. Hawkins was not selected for the Supervisor of Stores position. (Id.)

16. Ms. Lovett stated that the interview process should be impartial, fair and unbiased. (Exhibit A, Lovett Depo. P. 107) But she could not explain why her comments during the interview and the Human resource person were the same in regards to daily observation.

17. On or about February 28, 2006 a job was posted for supervisor of stores that closed on March 7, 2006. (Exhibit A, Lovett Depo. Pp. 71-72)

18. According to Ms. Lovett, at the time the job for supervisor store's closed Ms. Miller had not completed the supervisor assessment center. Emmett Hawkins had completed the supervisor assessment center at the time the job closed. (Exhibit A, Lovett Depo. Pp. 74-75)

19. According to Ms. Lovett, she received an interview package that had 7 sheets which was marked as Exhibit 6. (Exhibit A, Lovett Depo. P. 89)

20. Page 7 was the selection rating card. According to Ms. Lovett she gave Ms. Miller twenty points for completing the assessment center even though she had not completed the supervisor assessment center. (Exhibit A, Lovett Depo. Pp. 98-100)

21. Based on the selection form Ms. Lovett selected Nancy Miller to the position of Supervisor of Stores on March 29, 2006. (Exhibit L)

22. According to Ms. Lovett at the time Emmett Hawkins competed for the job of supervisor stores he had a bachelor's degree, but she did not realize it was from Christian Brothers University her alma mater even though she states he would have revealed that to her in the interview. (Exhibit A, Lovett Depo. P. 77)

23. Ms. Lovett's interview notes clearly states that he revealed to her that he graduated from Christian Brothers University. (Exhibit A, Lovett Depo. P. 86)

24. Ms. Lovett changed her interview notes to give the Plaintiff a lower score on two categories. (Exhibit D, Pp.1,3) But for Ms. Lovett change in scores, Mr. Hawkins would have been superior on her score card. (Exhibit A, Lovett Depo. P. 175)

3

25. Ms. Lovett had no idea what was considered journey man experience in stores. (Exhibit A, Lovett Depo. Pp. 195-196)

26. Emmett Hawkins was significantly more qualified than Nancy Miller, he was qualified to compete for the job of Assistant Manager, Stores and Nancy Miller was not qualified to compete for Assistant Manager, Stores. (Exhibit A, Lovett Depo. P. 128)

27. After Mr. Hawkins was not selected to the position of Supervisor stores, he sent Ms. Lovett an email asking to speak with her about not receiving a promotion in May of 2006. Ms. Lovett would not speak to Mr. Hawkins about the promotional process. (Exhibit A, Lovett Depo. P. 55)

28. After Mr. Hawkins received no response from his supervisor, he filed a complaint with the EEOC. Ms. Lovett was interviewed on March 18, 2008. (Exhibit A, Lovett Depo. P. 65)

**Paula Mitchell**

29. Paula Mitchell is a Human Resource Representative employed by MLGW. (Exhibit M, Mitchell Depo. Pp. 13, 15)

30. Ms. Mitchell has conducted more than forty investigations as a Human resources representative. (Exhibit M, Mitchell Depo. P. 11)

31. Ms. Mitchell stated that in all the cases that she investigated only one case resulted in a discrimination charge against MLGW even though the Federal Court ruled that on at least one of her cases involving Mary Helen Lovett the Court ruled that MLGW discriminated against Mr. Shorter b/m. (Exhibit M, Mitchell Depo. Pp. 60-61)

32. Ms. Mitchell's job duties are to take internal complaints from employees and/or vendors, sometimes the public depending on the situation, applicants, also to respond to external complaints from the Tennessee Human Rights Commissions and/or EEOC. (Exhibit M, Mitchell Depo. P. 18)

33. Ms. Mitchell states that there have been at least seven complaints of discrimination against Mary Helen Lovett. Some of the complaints involved people of color specifically that she was discriminating against blacks. (Exhibit M, Mitchell Depo. Pp. 19-20)

34. Ms. Mitchell investigated Emmett Hawkins complaint that Mary Helen Lovett was discriminating against him. (Exhibit M, Mitchell Depo. P. 22)

35. During Ms. Mitchell's investigation she uncovered the following information:

36. Emmett Hawkins had a Bachelor's degree and Nancy Miller did not. (Exhibit M, Mitchell Depo. P. 23)

37. Emmett Hawkins had ten years experience in job that he was competing for as supervisor and Nancy Miller did not. (Exhibit M, Mitchell Depo. P. 28)

38. Ms. Mitchell did not check into Mary Helen Lovett's history of promoting blacks as opposed to whites. (Exhibit M, Mitchell Depo. P. 26)

39. Ms. Mitchell did not check to see how many whites that Mary Helen Lovett put into acting positions as opposed to blacks being put into acting positions. (Exhibit M, Mitchell Depo. P. 23)

40. Ms. Mitchell stated that based on a letter that was sent to the President of MLGW, Emmett Hawkins skills were superior to Nancy Miller even though the document was missing a degree that Hawkins had at the time of the preparation of the document. (Exhibit M, Mitchell Depo. P. 30)

41. Ms. Mitchell stated that the fact that Emmett Hawkins had a bachelor degree would have been pertinent information to the president of MLGW. (Exhibit M, Mitchell Depo. P. 33)

42. The President of MLGW was concerned why Nancy Miller was selected over Hawkins based on his qualifications.

43. Ms. Mitchell could not explain what was considered journeyman experience. (Exhibit M, Mitchell Depo. P. 45)

44. Ms. Mitchell states that Nancy Miller does not qualify for the position of Assistant Manager of Stores, but Emmett Hawkins does qualify for the position of Assistant Manager of Stores. A job one level higher than the job she currently holds. (Exhibit M, Mitchell Depo. P. 57)

45. Ms. Mitchell had an interview with Audrey Bonner, EEOC investigator, who told Ms. Mitchell that she had concluded that there is enough information to conclude that Emmett Hawkins had been discriminated against by MLGW because Hawkins had 19 years in

management vs. Millers 7 years. She was also concerned that Emmett Hawkins' college degree was left off in a letter that was sent to the President of MLGW. (Exhibit O)

46. Ms. Mitchell also stated that she received a determination letter from the EEOC that stated the evidence obtained by the Commission revealed that Respondent announced a job vacancy for a supervisor in March 2006. It is undisputed that Charging Party applied for, was qualified, was interviewed and was considered for the promotion. Record evidence disclosed that Charging party's qualifications were superior compared to the white successful candidate. Specifically, the investigation revealed that the Charging party had about 20 years of management experience and performed in the same/similar position for about 10 years prior to the elimination of the job. Further Charging party was and continues to be an employee in good standing. Exhibit O (Exhibit M, Mitchell Depo. P. 37and Exhibit P)

47. Based on this analysis, the evidence is sufficient to conclude that the Charging party was denied the promotion because of his race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended. (Id.)

48. Ms. Mitchell also states that the HR person and the Selector come together and confer after each interview. (Exhibit M, Mitchell Depo. P. 71)

49. Ms. Mitchell reviewed the interview notes of Elbert Davis in the selection of Nancy Mitchison. She stated that she has no idea how Davis as an HR person would be observing a person in their daily duties as noted a weakness by Mr. Davis on Emmett Hawkins. (Exhibit M, Mitchell Depo. Pp. 76-77)

**Verlinda Henning**

50. Ms. Henning and Ms. Lovett conferred after the interviews were completed and they compare the interview candidate's response to each question. (Exhibit Q, Henning Depo. P. 68)

Q. Do y'all get together and evaluate them, or do y'all evaluate them as they're answering the questions?

A. No. We evaluate after the interview is completed. Because when you're listening to people and you're taking notes --because I don't have the luxury of taping an interview.

> So when you're taking notes, you're not sitting there writing down what grade they're going to get or how many points they'll get. That's a discussion that takes place after the interviewee has left. And it takes place between both parties.
>
> And it's not a case where either party says, well, this person should get all, you know, whatever, 3s, 2s, 1s. It's a discussion. At least, that's how I did it.

(Exhibit Q, Henning Depo. P 69)

51. Specifically, Ms. Henning testified that after the candidates left and they were already rated by each interviewer, then they would discuss. Because they are suppose to rate independently. (Exhibit Q, Henning Depo. P 88)

52. Ms. Henning stated that outside knowledge should not be discussed between the interviewers. (Exhibit Q, Henning Depo. P 70)

53. Ms. Henning stated that the supervisor assessment center is a pass, fail, but there is a range. (Exhibit Q, Henning Depo. P 82)

54. No matter what Ms. Henning stated during the interview the ultimate decision was Mary Helen Lovett. (Exhibit Q, Henning Depo. Pp. 113-114)

> Q. I'm just talking about looking at just the raw documents.
>
> A. I can't tell that he scored higher. I can't say that unequivocally makes him the better candidate.
>
> Q. Okay. But you said scoring lower in the other interview made Ms. Miller the better candidate.
>
> A. I said that interview scores are important. Interview scores are not the only thing that's important, though.

(Exhibit Q, Henning Depo. P. 118)

> Q. How many times has somebody filed a discrimination complaint against you for promotions?
>
> A. This is an estimate because I don't sit down and think about that. I would say maybe two or three times over the course of my HR career.
>
> Q. Was one of those times involving Emmett Hawkins?
>
> A. I think so.

7

(Exhibit Q, Henning Depo. P. 30)

>    Q. Did you know that Emmett Hawkins filed a complaint of discrimination?
>
>    A. I do now.
>
>    Q. Prior to now, did you know that?
>
>    A. I really can't remember if he was one of the ones or not.

(Exhibit Q, Henning Depo. P. 30)

>    Respectfully submitted,
>
>    s/Darrell J. O'Neal
>
>    _____
>    Darrell J. O'Neal (BPR# 20927)
>    Attorney for Plaintiff
>    2129 Winchester Road
>    Memphis, TN 38116
>    (901) 345-8009

## CERTIFICATE OF SERVICE

I, Darrell J. O'Neal do hereby certify that a copy of the foregoing has been sent ECF/ECM to Gabriel McGaha, Attorney for Defendant at 165 Madison Avenue, Suite 2000, Memphis, TN 38103 on this the 29th day of May 2010.

>    s/Darrell J. O'Neal
>
>    _____
>    Darrell J. O'Neal