IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EMMETT HAWKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:09-CV-02024-SHM-dkv |
| | )   JURY TRIAL DEMANDED |
| MEMPHIS LIGHT GAS AND WATER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT MEMPHIS LIGHT, GAS & WATER DIVISION'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Memphis Light, Gas & Water's (hereinafter, "MLG&W" or "Division") and submit this Reply in Support of its Motion for Summary Judgment (Doc. 29). MLG&W continues to rely on the grounds set forth in its memorandum in support of its motion for summary judgment; however, several issues raised in Plaintiff Emmett Hawkins' (hereinafter, "Plaintiff") Response warrant a reply. Accordingly, MLG&W supplements the previously submitted memorandum of law with the points and authorities set out in this Reply brief.

**INTRODUCTION**

In its Response, Plaintiff contends that the legitimate non-discriminatory reasons set out in MLG&W's Motion for Summary Judgment is pretext for race discrimination. As grounds, Plaintiff asserts that MLG&W has espoused a "culture of discrimination" and that Plaintiff is significantly more qualified than Nancy Miller, the person ultimately chose for the Supervisor, Stores position. Plaintiff also relies on the EEOC's probable cause determination to support his

contention that a material issue of genuine fact exists in this case. For the following reasons, Plaintiff's pretext arguments are without merit, and MLG&W is entitled to summary judgment as a matter of law.

## DISCUSSION

### A. EEOC Determination is not Sufficient to Establish a Genuine Issue of Material Fact so as to Preclude Summary Judgment.

At the outset of the Response, Plaintiff makes it clear that he intends to rely on the EEOC's cause determination to establish a genuine issue of material fact and thereby prevent summary judgment. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 1.) Plaintiff's reliance, however, is misplaced.

Under Sixth Circuit law, district courts have discretion to refuse to admit EEOC cause determinations. *See Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) ("This court has explicitly rule that it is 'within the [sound] discretion [of the district court] whether . . . to accept the EEOC's final investigation report" in evidence.") (quoting *Heard v. Mueller Co.*, 464 F.2d 90, 194 (6th Cir. 1972)). District courts do not owe deference to EEOC determinations and its findings have little to no probative value since the district court considers the same evidence. *See id.* For these reasons, the Court should exercise its discretion in declining to consider the EEOC's cause determination.

### B. MLG&W Does Not Have a "Culture of Discrimination."

Notwithstanding Plaintiff's "kitchen sink" approach in responding to MLG&W's Motion for Summary Judgment, the only issue before the Court is whether the Division discriminated against Plaintiff based on race when it chose not to promote him to the Supervisor, Stores position in 2006. In an effort to avoid the facts surrounding the 2006 promotion, Plaintiff

2

attempts to cast a wide net by asserting that the Division has espoused a "culture of discrimination." Plaintiff's contention, however, is without merit.

The problem with Plaintiff's "culture of discrimination" argument is that it finds no support in the record. Instead of fact, Plaintiff offers argument, which may not be substituted for a factual dispute at the summary judgment stage of litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (finding that a party responding to a properly supported summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial") Plaintiff's entire "culture of discrimination" argument is premised on his bid for the Supervisor, Stores position in December 2001 and his conclusory allegations that Mary Helen Lovett is a racist. Neither of these grounds, however, lend credence to Plaintiff's claim.

### 1. Plaintiff's assertion that he was discriminated against based on race when he bid for the Supervisor, Stores position in 2001 is, at best, conveniently asserted and irrelevant to the issue before the Court.

To support his contention that a "culture of discrimination" exists at MLG&W, Plaintiff argues that it "appears" that he did not receive a fair interview when he bid for the Supervisor, Stores position in December 2001.[1] Specifically, Plaintiff contends that after he interviewed with Mary Helen Lovett (white/female), Manager of Transportation and Stores and Elbert Davis (black/male), a former human resources professional at MLG&W, Mr. Davis made comments on his interview sheet relating to "daily observations." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 4.) Essentially, Plaintiff contends that as a human resources professional, Mr. Davis would not have had occasion to observe Plaintiff's daily operations, and therefore creating an inference that Ms. Lovett intentionally "poisoned" Mr. Davis' objectivity in scoring Plaintiff's interview. *See id.*

---

[1] This position was ultimately awarded to Nancy Mitchison, a white female.

3

As an initial matter, Plaintiff's bid for the Supervisor, Stores position more than four years prior to Plaintiff's bid for the position in question is hardly sufficient to support a claim that MLG&W harbors a "culture of discrimination." *See Lujan v. Franklin County Bd. of Educ.*, 766 F.2d 917, 930 (6th Cir. 1985). Although Plaintiff has been continuously employed by the Division since January 1982, he has failed to offer any testimony, other than his own, or point to any other specific incident which would evidence an alleged "culture of discrimination." Moreover, Plaintiff never filed an EEOC charge relating to his 2001 bid for the Supervisor, Stores position, and until this law suit was filed, has never previously asserted that he has been discriminated against by MLG&W based on his race.[2] Indeed, since Plaintiff was first hired by the Division in 1982 as a clerk in microfilm, he has been promoted on at least four different occasions. (*See* Def.'s Mot. for Summ. J., Ex. B (Doc. 29-4).) To the extent that Plaintiff now wishes to assert that he was discriminated based on his race in 2002, his claim is time-barred. *See Tartt v. City of Clarksville*, 149 Fed. Appx. 456, 461 (6th Cir. 2005) (finding that the plaintiff's failure to file an EEOC charge within 300 days of the alleged discrimination rendered his claims untimely). Thus, Plaintiff's assertion that he was discriminated against based on race during his bid for the Supervisor, Stores position in 2001 is, at best, conveniently asserted and irrelevant to the issue to be determined in the instant case.

  **2. Plaintiff's allegations that Mary Helen Lovett is a racist are unfounded.**

The second argument Plaintiff asserts to establish that a "culture of discrimination" exists at MLG&W is that Mary Helen Lovett "has a history of discriminating against blacks." (Pl.'s

---

[2] In fact, Plaintiff testified that according to the "rumor mill," Nancy Mitchison was selected for the Supervisor, Stores position in 2002 "as a favor to a VP." (Hawkins Dep. 46:10-13 (attached hereto as Ex. A).) Furthermore, when asked in his deposition whether he could recall the name of *any* black male that had applied for and was not selected for a position where Mary Helen Lovett was the selector, Plaintiff could not recall a single name. (Hawkins Dep. 63:2-11.)

Resp. in Opp'n to Def.'s Mot. for Summ. J. 1.) In attempting to support this allegation, Plaintiff states that Ms. Lovett admitted that she was aware that MLG&W employees had "complained that she is a racist," and that Ms. Lovett has disproportionately promoted whites to positions higher than Foreman. Plaintiff's assertions are without merit. (*Id.* at 4-5.)

Plaintiff states that "Mary Helen Lovett admitted during her deposition that her employees have complained that she is a racist." (*Id.* at 4.) The portion of Ms. Lovett's deposition that Plaintiff cites states as follows:

> Q: Okay. Okay. Have you ever heard any employees of Memphis, Light, Gas & Water complain that you were a racist.
> A: Yes.
> Q: Okay. What have you done about that?
> A: Nothing. There's nothing I can do about somebody's opinion of me.

(Lovett Dep. 23:7-13.) Considering Plaintiff's actual testimony, no reasonable inference can be made that Ms. Lovett "has a history of discriminating against blacks." Ms. Lovett never admitted that she *knew* that *her* employees complained that she was a racist. Rather Ms. Lovett testified that she *heard* that one or more *unidentified* MLG&W employee(s) had complained to an unidentified person(s) at an unspecified time that she was a racist. Plaintiff goes on to state that "Ms. Lovett also admitted that employees have complained that she is discriminating against them." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 4.) The testimony Plaintiff cites, however, states as follows:

> Q: Okay. Have you heard employees complaining that you were discriminating against blacks?
> A: Discriminating, not specifically against blacks.

(Lovett Dep. 27:19-23.) Again, it is clear from Ms. Lovett's testimony that she *heard* that employees had complained that she discriminated against them, but there is no indication from whom she heard this or even *when* she heard it. Ms. Lovett has been employed at MLG&W for

5

over twenty-three years, and thus, any such comments made substantially before the relevant time period or since this law suit was filed would have little to no relevance.

Furthermore, it is well-settled that inadmissible hearsay may not be considered on summary judgment. *See* Fed. R. Evid. 802; *see also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("Evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded") (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). Thus, Ms. Lovett's testimony that she *heard* that unidentified employees had complained that she was a racist and that she *heard* unidentified employees complaining that she had engaged in discrimination is inadmissible, as it contains at least one if not multiple layers of hearsay. *Thomas v. Union Inst.*, 98 Fed. App. 462, 465 (6th Cir. 2004) (finding that statements offered to prove that defendants were racist were presumably hearsay since they were offered to prove the truth of the matter asserted); *See Woods v. Perry County*, 65 Fed. Appx. 63, 67-68 (7th Cir. 2003) (finding that the plaintiff's assertion that he had heard from fellow employees that the person who fired him was a racist was inadmissible hearsay).

Even if the Court were to find that the anonymous complaints were not hearsay or that they fell under one of the hearsay exceptions enumerated in the Federal Rules of Evidence, it is well-established that "[r]umors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Giles v. Norman Noble, Inc.*, 88 Fed. Appx. 890, 895 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

In addition to arguing that Ms. Lovett's testimony establishes a "culture of discrimination," Plaintiff contends that Ms. Lovett failed to promote a black person to a position

6

higher than Foreman prior to 2007 and that she disproportionately allowed whites to act in positions higher than Foreman. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 4.) Curiously, however, Plaintiff fails to provide statistical data to support these assertions.

For example, while Plaintiff asserts that "prior to 2009 Ms. Lovett had never promoted a black employee to any position higher than Foreman," she offers to data relating to how many blacks actually *bid* for these positions. (*See id.*); *See Farber v. Massillon Bd. of Ed.*, 917 F.2d 1391, 1397 (6th Cir. 1990) (upholding the district court's determination that the plaintiff had failed to prove her claim of systematic sex discrimination on the grounds that she had not presented evidence of the size of the pool of eligible female candidates for the positions sought). Likewise, Plaintiff's response brief is void of any data relating to how many black employees actually requested to act in these positions.

In her deposition, Ms. Lovett testified that she personally *asked* black employees to become a part of her succession plan so that they could act in some of these positions and they declined. (Lovett Dep. 205:21 – 207:1 (attached hereto as Ex. B).) Ms. Lovett further testified that some of these positions were ultimately filled by whites. (*Id.*) At her deposition, Ms. Lovett identified at least three blacks that she asked to become apart of her succession plan to become a supervisor and they all declined. (*Id.* at 207:3 – 209:5.) In fact, Ms. Lovett testified that she asked at least two black employees, Sam Carter and Brenda Turner to become part of her succession plan to compete for the same position Plaintiff competed for in 2006 and they declined the invitation. (*Id.* at 211:11-22.) Having personally solicited black employees to compete for the very position in question clearly indicates that Ms. Lovett did not fail to promote Plaintiff based on his race.

7

Finally, Plaintiff avers that Paula Mitchell (black/female), a Human Resources representative at MLG&W testified that there have been seven complaints of discrimination filed against Mary Helen Lovett some of which involved people of color. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 5.) What Plaintiff fails to mention is that Ms. Mitchell's investigations into each of these complaints revealed that Ms. Lovett had not in fact discriminated against anyone. (Mitchell Dep. 49:10-21 (attached hereto as Ex. C).) Moreover, Plaintiff's assertion that a "[f]ederal court ruled that on at least one of [Ms. Mitchell's] cases involving Mary Helen Lovett, MLGW discriminated against Leo Shorter [black/male]" is simply untrue. (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 5.) The Order on Jury Verdict and Judgment in the case to which Plaintiff refers clearly states that the jury in the case found in favor of MLG&W on Mr. Shorter's race discrimination claim. (*See* Order on Jury Verdict, *Shorter v. Memphis Light, Gas & Water*, No. 02-2009-D, (W.D. Tenn. 2009) (attached hereto as Ex. D).) For these reasons, Plaintiff's assertion that a culture of discrimination exists at MLG&W is without merit.

**C.    Hawkins was not Significantly More Qualified than Nancy Miller for the Supervisor, Stores Position.[3]**

In addition to arguing that a "culture of discrimination" exists at MLG&W, Plaintiff asserts that he was significantly more qualified than Nancy Miller for the Supervisor, Stores

---

[3]Before reaching Plaintiff's arguments MLG&W must first address Plaintiff's baseless assertions that it attempted to "mislead the Court" with regard to Plaintiff's qualifications by citing *Childs v. Green Local School Dist.* and *Ajao v. Bed Bath & Beyond, Inc.* in its Motion for Summary Judgment (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 14-15.) A cursory reading of MLG&W's Memorandum in Support of its Motion for Summary Judgment indicates that these cases were generally cited and were merely included to illustrate examples of what the Sixth Circuit has determined are legitimate non-discriminatory reasons for not promoting an employee. In no instance did MLG&W attempt to analogize the facts of either case to the case at bar.

Plaintiff also states that MLG&W attempted to "mislead the Court" when it stated that Ms. Miller had fifteen years of management experience. While Plaintiff wishes to dispute the issue of whether Ms. Miller functioned in a managerial role while serving as a Material Handler from July 1992 to September 1999, MLG&W will concede this fact for purposes of this Motion for Summary Judgment, as it contends that it is not a material fact as to preclude summary judgment in this case. (*See* Def.'s Mot. for Summ. J., Ex. E.)

8

position in 2006.  (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 5.)  To support his position, Plaintiff states that Hawkins had more supervisory experience than Miller and that, unlike Miller, he had a college degree.  (*Id.* at 6.)  Plaintiff's assertions with regard to his qualifications, however, are conclusory and find no basis in fact or law.

It is well settled that in a Title VII case, the Sixth Circuit looks to the employer's motivation for the employment decision, not the applicant's perceptions of what qualifications are required for a particular position.  *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). Moreover, "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates." *Id.* (citing *United Steelworkers of Am. v. Weber*, 443 U.S. 193, 207 (1979)).  The Sixth Circuit has recognized that employers have even greater discretion in choosing management-level employees because of the nature of these positions.  *Wrenn*, 808 F.2d at 502 (citing *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) (citations omitted)); *Farber v. Massillon Bd. of Ed.*, 917 F.2d 1391, 1399 (6th Cir. 1990) ("The use of subjective criteria is permissible in the selection of management positions.")

Even where a plaintiff is able to establish that a reasonable fact finder could determine that his qualifications are superior to those of the person who was not hired or promoted, such evidence alone is insufficient to raise a question of fact as to pretext.  *See Burke-Johnson v. Dep't of Veterans Affairs*, 211 Fed. Appx. 442, 450 (6th Cir. 2006).  When a plaintiff has presented little evidence other than his allegedly superior qualifications, he will not survive summary judgment unless his qualifications are "so significantly better than the successful applicant's qualifications that no reasonable employer would have chose the latter over the former." *Id.* at 450; *Bender v. Hecht's Dep't Stores*, 455 F.3d 612 (6th Cir. 2006) ("If two reasonable decisionmakers [sic] could consider the candidates' qualifications and arrive at

9

opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's.")

Consistent with his "kitchen sink" approach to this case, Plaintiff makes a number of hypothetical arguments and assertions to support his position that he was "significantly more qualified" than Nancy Miller for the Supervisor Stores position in 2006, many which find no support in either fact or reason.[4] Plaintiff's primary arguments, however, appear to be that he was more qualified for the Supervisor, Stores position than Nancy Miller because he had more supervisory experience and because he has earned a college degree.

While it is true that Plaintiff served as Supervisor, Material Control from 1987-1997, both Plaintiff and Ms. Miller have over twenty years of experience in the Stores division. (*See* Def.'s Mot. for Summ. J., Exs. B, E.)  Moreover, while Plaintiff appeared to be qualified for the Supervisor, Stores position, when compared to Nancy Miller, he did not sufficiently demonstrate a willingness to employ the skills necessary to effectively serve in the position. (*Id.* at 5-6.)  Ms. Miller's answers to interview questions, for example, exemplified an ability and readiness that was lacking from Plaintiff. (*Id.*)  While Ms. Miller seemed eager to assume all tasks associated with the Supervisor, Stores position, Plaintiff's answers to certain interview questions appeared

---

[4] For example, Plaintiff spend a significant amount of time arguing that he was significantly more qualified than Nancy Miller for the Supervisor, Stores position because he would have met the minimum job description for the next position up, Assistant Manager, Stores, whereas Ms. Miller would not because she does not have a college degree. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 20; Lovett Dep. 128:20 – 129:6.)  However, because it is undisputed that a college degree was not required to compete for the Supervisor, Stores position, this fact, to the extent that it's true, is wholly irrelevant to the issue in this case.

Plaintiff also avers that "Ms. Lovett changed her interview notes to give Hawkins a lower score on two categories." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 20).  Even if this were true, the two changes totaled 20 points. (Def.'s Mot. for Summ. J., Exs. D, L.)  This is hardly significant since Ms. Lovett awarded Plaintiff a total of 260 interview points compared to 400 interview points for Ms. Miller.  Plaintiff's statement that "[b]ut for Ms. Lovett's change in scores, Mr. Hawkins would have been superior on her score card" simply finds no basis in the record. (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 20-21.)

to indicate that he disliked preparing reports, budgeting, and performing two-minute reviews. (*Id.*)

Further, in addition to their comparable experience in the Stores division, and Ms. Miller's superior interview score, Ms. Miller received higher overall evaluations than Plaintiff for five consecutive years prior to Plaintiff and Ms. Miller's bid for the Supervisor, Stores position in 2006. (See Hawkins and Miller Evaluations (attached hereto as Exs. G, F).) In fact, in 2001, 2004, and 2005 Ms. Miller received the highest rating possible for an MLG&W employee.[5]

Plaintiff spends considerable time arguing that he was significantly more qualified than Ms. Miller because he had earned a degree and she had not. Plaintiff further contends that MLG&W President, Joseph Lee, was "deceived and misinformed" when a May 17, 2006 requesting his approval to offer the position to Nancy Miller failed to include a reference to Plaintiff's Bachelor's degree. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 11; *see* Def.'s Mot. for Summ. J., Ex. O.)

The undisputed facts are that Plaintiff did not receive his degree from Christian Brothers University until May 12, 2006, two months after Plaintiff bid for and interviewed for the position and one month after the approval request was sent to Mr. Lee. (*See* Hawkins Diploma, (attached hereto as Ex. E).) In fact, by this time, Ms. Miller had already been promoted. Moreover, other than his own statements, there was no evidence in Plaintiff's personnel file which corroborated his assertion that he was a college graduate prior to May 12, 2006. Finally, even if Plaintiff had graduated from college prior to bidding for the Supervisor, Stores position in 2006, a college degree was not a requirement for the position and was not even listed as a preference. (Def.'s

---

[5] With the exception of the 2005 evaluations, all of these performance appraisals were completed by Nancy Mitchison, an ostensibly unbiased third-party reviewer.

Mot. for Summ. J., Ex. C.)  Plaintiff's arguments that he was "significantly more qualified" than Nancy Miller for the Supervisor, Stores position are without merit.

## CONCLUSION

For the foregoing reasons and those contained in its memorandum in support of the pending motion for summary judgment, MLG&W moves this Court to grant summary judgment in its favor as a matter of law.

Respectfully submitted,

/s Gabriel P. McGaha
Bruce A. McMullen, Esq. (BPR # 18126)
Stacie S. Winkler, Esq. (BPR # 23098)
Gabriel P. McGaha, Esq. (BPR # 27413)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 577-2000
Facsimile:  (901) 577-2303
bmcmullen@bakerdonelson.com
swinkler@bakerdonelson.com

*Attorneys for Defendant Memphis Light, Gas & Water Division*

M GPM01 2076384 v1
0-0 06/28/2010

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a true and exact copy of the foregoing has been forwarded, via electronic mail, through the Court's Electronic Case Filing System, to the following on this the 23rd day of July, 2010:

                         Darrell J. O'Neal, Esq.
                         2129 Winchester Road
                          Memphis, TN  38116

                                          /s/ Gabriel P. McGaha

M GPM01 2076384 v1
0-0 06/28/2010