IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EMMETT HAWKINS,                    )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )        No. 09-2024-Ma
                                   )
MEMPHIS LIGHT GAS AND WATER,       )
                                   )
     Defendant.                    )

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Emmett Hawkins ("Hawkins") alleges race-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. (See Compl. ¶¶ 15-32, ECF No. 1.) Before the Court is Defendant Memphis Light Gas and Water's ("MLGW") May 1, 2010 Motion for Summary Judgment. (Def.'s Mot. For Summ. J., ECF No. 29.) ("Def.'s Mot.") Hawkins responded in opposition on May 31, 2010. (Resp. to Mot. For Summ. J., ECF No. 34; Pl.'s Mem. In Resp. to Mot. For Summ. J., ECF No. 34-1 ("Pl.'s Resp.").)[1] For the following reasons, MLGW's motion is GRANTED.

---

[1] MLGW moved for summary judgment and Plaintiff responded while the previous edition of the local rules governed actions in this district. Under that version, Local Rule 7.2(d)(3) provided that a party opposing a motion for summary judgment who disputed any of the material facts on which the proponent relied was to "respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material

I.   **Background**[2]

Plaintiff began his employment with MLGW in 1981 as a temporary employee in the microfilm department. (Def's Statement of Undisputed Material Facts ¶¶ 1-2 ("Def.'s Statement").) Plaintiff received four promotions within MLGW between 1982 and 2001, eventually serving as a Foreman of Salvage. (Id. At ¶¶ 4-6.) After serving as Foreman, Plaintiff became the Supervisor of Material Control. He worked in that capacity for approximately thirteen years. Plaintiff became the Foreman in Stores when the Material Control and Stores divisions merged in the late 1990s. (See id. ¶¶ 7-8.) Plaintiff applied for the position of Supervisor of the Stores division in 2002, but Nancy Mitchison received the promotion. (See Mary Helen Lovett Dep. 66:9-19, ECF No. 34-5.) ("Lovett Dep. 1.")

On February 28, 2006, the MLGW Human Resources Department posted a job solicitation for a supervisor in the Stores division. (Def.'s Statement ¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ 17, ECF No. 34-2 ("Pl.'s Statement").) The announcement listed the position's minimum requirements as follows:

---

facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3). Plaintiff has failed to comply with the local rule. (See Pl.'s Resp.) Unless otherwise stated, Plaintiff's responses have been disregarded where he has failed to comply with the local rules. See Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007).

[2] All facts in the Background are undisputed for purposes of MLGW's Motion for Summary Judgment unless otherwise stated.

> Bachelor's degree in Business Administration with 4 to 6 years of stores experience **OR** ten years of journeyman level experience in stores with 2 to 4 years Foreman experience.  Must successfully complete Supervisor Assessment Center.  Must be familiar with the operations of the Stores Department.  Must have a valid driver's license from state of residence.

(Def.'s Statement ¶ 15; Ex. C, ECF No. 29-5.) ("Job Announcement.")  Successful applicants would be responsible for "train[ing], direct[ing], and supervis[ing] employees . . . salvaging or recycling Division materials, [and] disposing of hazardous materials and operating [the] company store." (Def.'s Statement ¶ 11.)

Three candidates responded to the job posting.  In addition to Plaintiff, Gala Gailes and Nancy Miller timely submitted bids for the position.[3]   (Def.'s Statement ¶¶ 13-14.)   Verlinda Henning, a Human Resources ("HR") professional for the executive staff division at MLGW, reviewed the applicants' personnel files and decided whether each candidate met the position's minimum requirements.  (Def.'s Statement ¶ 15.)  Human Resources then generated "research sheet[s]" for each candidate, which contained the candidate's hire date, work history, education, training, and other information.  (Id.; see also Henning Dep. 49:4-8, Jan 26, 2010, ECF No. 29-6.)

Initial reviews of the research sheets narrowed the field of candidates to two.  Gala Gailes lacked both a Bachelor's

---

[3] Gales was African American, and Miller was white.  (Def's Statement ¶ 14.)

Degree and the requisite work experience in the Stores department, so she was eliminated from consideration. (Def.'s Statement ¶ 19.) Miller and Plaintiff were qualified. (<u>Id.</u> ¶¶ 20-21.) Miller lacked a Bachelor's Degree in Business Administration, but had approximately fifteen years of experience as a journeyman and nearly five years as a Foreman, all in the Stores division. (<u>Id.</u> ¶ 20.) Plaintiff was qualified because he had nineteen years of experience, including ten as a Foreman. (<u>Id.</u> ¶ 21.) Plaintiff's research sheet indicated that he had college experience. (<u>Id.</u>) Plaintiff completed his Bachelor's Degree on May 12, 2006, after the application deadline. (<u>See</u> Ex. E, ECF No. 40-5) ("Diploma.")

The research sheet used by Human Resources did not include a section for the successful completion of the Supervisor Assessment Center.[4] (Def.'s Statement ¶ 17.) On March 17, 2006, Henning contacted the MLGW Training Center Assessment & Development Department to determine whether Nancy Miller and Plaintiff had successfully completed the Supervisor Assessment Center ("SAC"). (<u>Id.</u> ¶ 27; Def.'s Mem. in Supp. of its Mot. for Summ. J. 4, ECF No. 29-1 ("Def.'s Mem.").) Later that day, Henning learned that that both Miller and Plaintiff had successfully passed the SAC. (Def.'s Statement ¶ 24-25, 27.)

---

[4] The Supervisor Assessment Center is a training course that is required by MLGW for all management and supervisory employees. (<u>See</u> Def.'s Mem. 4.)

Mary Helen Lovett ("Lovett"), the Manager of Transportation and Stores, scheduled interviews for March 28, 2006, but they were rescheduled to March 29. (Id. ¶¶ 23, 26.)

Two days before the interviews were to commence, Henning received word from the Training Center that Miller had not completed the SAC. (Id. ¶ 28.) Henning requested that Miller be scheduled for the April 3, 2006 SAC, and Miller was permitted to interview with her SAC scores pending. Id. ¶ 29. Permitting employees to interview for positions before going through the SAC is consistent with standard MLGW hiring procedures. (Id. ¶ 41.)

Henning and Lovett conducted both interviews, and they asked each candidate the same fourteen questions. (Def.'s Mem. 5.) Interview questions gauged the candidates' abilities and experiences in planning, communication, problem solving, decision-making, adaptability, initiative, cooperation, and motivation. (Id.) Candidates' scores in each category ranged from 0 to 30 points, with 0 the lowest and 30 the highest.[5] (See Ex. J, ECF No. 29-12.) The highest score possible was 420 points. (See id.) After conducting the interviews, Henning and Lovett discussed each candidate's responses and tabulated final scores. (Def.'s Mem. 5.)

---

[5] There is no evidence in the record to explain the practical differences between 0, 10, 20, and 30 point answers.

At the conclusion of Miller's interview, both Henning and Lovett gave her a score of 400 out of 420 possible points. Miller's strengths were noted to be dependability, people skills, the ability to delegate, and a willingness to ask questions.  (See Ex. K, ECF No. 29-13) ("Miller Evaluation 1.") Specifically, Henning was impressed by Miller's work experience, conflict resolution skills, planning, and willingness to prepare reports.  (Id.)  Lovett noted Miller's dependability, people skills, and ability to motivate others.  (See Ex. L, ECF No. 29-14) ("Miller Evaluation 2.")  Overall, Miller's "Selection Card Rating," which aggregates a candidate's interview score and SAC to arrive at a final score, gave her 49 out of a total of 50. (Ex. E, ECF No. 34-9) ("Miller Evaluation 3.")  That score meant that Miller fell into the "Superior" category of employment candidates.  (Id.)

Prior to debriefing after Plaintiff's interview, Henning and Lovett scored Plaintiff differently.  (See Ex. J, ECF No. 29-12 ("Hawkins Evaluation 2"); see also Hawkins Evaluation 1.) Henning gave Plaintiff 280 out of 420 possible points, and the record reflects that Henning increased Plaintiff's scores in the areas of "Problem Solving" and "Motivation" to arrive at her final calculation.  (See Ex. J.)  Lovett gave plaintiff 260 out of 420 points, and the record reflects that she decreased Plaintiff's scores on the question of "what are the supervisor's

most important responsibilities?" and "Problem Solving." (See Hawkins Evaluation 1.) Plaintiff's "Selection Card Rating" gave him a score of 39 out of 50, which placed him in the "Acceptable" range of employment candidates. (Ex. D, ECF No. 34-8) ("Hawkins Evaluation 3.")

Henning identified Plaintiff's strengths as his vision for the Stores department, his philosophies and ideas, and his strong background. (See Def.'s Mem. 6.) Lovett gave Plaintiff high ratings in education, training, and experience. (Id.) Although Henning commended Plaintiff's vision and background, she noted that he was weak in preparing reports, budgeting, and performing two-minute reviews—three of the primary supervisory responsibilities. (See Henning Dep. 101:1-15, 98:16-19, 98:20-25.) Plaintiff received marginal scores in the areas of problem solving, cooperation, and motivating other employees. (See Hawkins Evaluation 1.)

On April 5, 2006, Henning contacted the Training Center to determine whether Miller had successfully completed the SAC. (Def.'s Statements ¶ 7.) Carlotta Burnette, a Training Center employee, informed Henning that Miller had. On April 17, 2006, Rutha Griffin, Henning's Supervisor, sent an interoffice memorandum to Joseph Lee III, the then-President of MLGW, requesting approval to offer Miller the position of Supervisor, Stores. (Id. ¶ 37.) Joseph Lee approved Miller's offer. (Id.

¶ 38.)  On May 2, 2006, all three candidates were informed of the employment decision, and Miller was selected for the Supervisor, Stores position.  (Id. ¶ 38.)

After he was not selected, Plaintiff requested the opportunity to speak with Lovett about the outcome.  (See Emmett Hawkins Dep. Oct. 23, 2008, 55:1-11, ECF No. 34-5) ("Hawkins Dep. 1.").)  Lovett referred Plaintiff to HR, in accordance with MLGW standard operating procedures.  (Id.)  Plaintiff then filed a charge with the Equal Employment Opportunity Commission ("EEOC").  (See Ex. A 55:18-22.)  On April 14, 2008, the EEOC determined that there was "reasonable cause" to believe that Plaintiff had been denied the promotion because of his race.  (See Ex. M, ECF No. 34-20) ("EEOC Letter.")

## II.  Jurisdiction

Because Hawkins' claims arise under Title VII, this Court has federal question jurisdiction.  See 28 U.S.C. §§ 1331, 1343(a)(4); Harper v. AutoAlliance Int'l, 392 F.3d 195, 201 (6th Cir. 2004) (concluding that Title VII claims arise under federal law).

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of either party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a).  The moving party satisfies this burden by demonstrating that the respondent, having had sufficient opportunities for discovery, has no evidence to support an essential element of his case.  See Fed. R. Civ. P. 56(c)(2); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Mere reliance on the pleadings is insufficient opposition to a properly supported motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead,

the nonmovant must present "concrete evidence supporting his claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The district court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty the identify specific evidence in the record that would be sufficient to justify a jury decision in his favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV. Analysis

### A. McDonnell Douglas

Title VII forbids employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a)(1); Daniels v. Bd. Of Educ. Of Ravenna City Sch. Dist., 805 F.2d 203, 206 (6th Cir. 1986). A Title VII

violation may be established under a theory of disparate treatment, where the employer "simply treats some people less favorably than others because of their race, color, religion, sex or national origin." Daniels, 805 F.2d at 206. Plaintiff alleges that MLGW violated Title VII by selecting an "unqualified white female for the job of Supervisor, [S]tores[,] even though [Plaintiff], a black male[,] was more qualified for the [position]," and basing its employment decision solely on Plaintiff's race. (See Compl. ¶¶ 29-30.)

Plaintiffs may establish disparate treatment by proving that they have been victims of intentional discrimination. Daniels, 805 F.2d at 206-07 (citations omitted). Disparate treatment may be proven by direct or circumstantial evidence. Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009). Where, as here, there is no direct evidence of racial discrimination, Plaintiff's circumstantial evidence is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); accord Chen, 580 F.3d at 400 (citation omitted). In Chen, the Sixth Circuit interpreted McDonnell Douglas to mean that:

> The burden is first on the plaintiff to demonstrate a prima facie case of race discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext-i.e. that the employer's explanation was fabricated to conceal an illegal motive.

Id. (citing Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007)).

A plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981) (citations omitted). If the plaintiff's employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must establish by a preponderance of the evidence that the employer's proffered reason is a pretext for discrimination. Id. at 254. "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." Macy v. Hopkins Cnty. Sch. Bd. Of Educ., 484 F.3d 357, 364 (6th Cir. 2007) (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000)).

Plaintiff's response to MLGW's Motion for Summary Judgment demonstrates that he intends to rely on the burden-shifting framework established in McDonnell Douglas to prove disparate treatment. See Pl.'s Resp. in Opp'n to the Def.'s Mot. for Summ. J. 13-26, ECF No. 34-1 ("Pl.'s Resp.").)

### B. Denial of Promotion for Supervisor, Stores Position

Plaintiff's claim that MLGW discriminated against him by failing to promote him to the Supervisor, Stores position does

not survive MLGW's Motion for Summary Judgment. Although Plaintiff has met his burden of establishing a prima facie case of disparate treatment, see Chen, 580 F.3d at 400, his proffered evidence is insufficient to rebut MLGW's legitimate, non-discriminatory explanation for denying his application. See id.

### 1. Hawkins Has Established a Prima Facie Case

Plaintiff must satisfy four criteria to establish a prima facie of discrimination based on a failure to promote:

> A prima facie case requires a plaintiff to show (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions.

Sutherland v. Mich. Dept. of Treasury, 344 F.3d 603, 614 (6th Cir. 2003) (citing Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000)). "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253 (1981). "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Id.

Plaintiff has satisfied his burden of proving a prima facie case. He is an African-American, a member of a protected class. See McDonnell Douglas, 411 U.S. at 802; Vaughn v. Watkins Motor

Lines, Inc., 291 F.3d 900, 906 (6th Cir. 2002).  He applied for and was determined to be qualified for the position of Supervisor, Stores.  (See Def.'s Statement ¶¶ 21, 30).  He interviewed for, but did not receive, the Supervisor, Stores promotion.  (See id. ¶ 30, 38.)  On May 2, 2006, Miller, a Caucasian woman, received the promotion to Supervisor, Stores. (Id. ¶ 38.)  Plaintiff has established a prima facie case of disparate treatment based on failure to promote.

> ### 2.   MLGW Has Articulated a Legitimate, Nondiscriminatory Reason for Failing to Promote Plaintiff

Because Plaintiff has established a prima facie case, the burden shifts to MLGW to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Burdine, 450 U.S. at 253; see also Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000).  That burden is "one of production, not persuasion" and involves no assessment of credibility.  Sanderson, 530 U.S. at 142 (citing St. Mary's Honor Ctr, 509 U.S. 502, 509 (1993)).  "[O]nce the employer has come forward with a nondiscriminatory reason for [its actions] the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanations." Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083 (6th Cir. 1994).

An employer's legitimate, nondiscriminatory reasons must be "clear and reasonably specific," and be supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus." Burdine, 450 U.S. at 258; see also White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008).[6]

MLGW's proffered explanation for hiring Miller is that, both in her interview and on the job, she demonstrated greater initiative and leadership than Plaintiff. (See Nancy Miller Department Interview Rec., ECF No. 29-18.) Lovett, in her role as Manager of the Transportation Department, observed Plaintiff and Miller in various capacities, and concluded that Miller's work performance was exemplary. (See Lovett Dep. 156: 18-23, ECF No. 29-8.) Miller met deadlines and "would keep [Lovett] on [her] toes about things [she] needed to do. [Miller] made [Lovett's] job easy." (Id. 156: 22-23.) With Plaintiff, "it was more having to check up on him, ask him for things, communicate the same information several times to get it done . . . [There] were several instances that things did not get done. It just made my job tougher." (Id. 156: 18-24.) After observing both candidates' work performances and having considered their responses to interview questions, Lovett

---

[6] Plaintiff relies on Baxter. Although the facts underlying Baxter's discussion of pretext distinguish it from this case, see infra, Baxter's discussion of the employer's legitimate, nondiscriminatory reasons is helpful.

concluded that Nancy Miller was better qualified for the position of Supervisor, Stores. (Id. 157: 10-14.)

MLGW's proffered reason is "facially legitimate and non-discriminatory." Baxter, 533 F.3d at 392. Lovett concluded that Miller had demonstrated "greater initiative and leadership," both in the interview and on the job. Id.; see also Baxter, 533 F.3d at 392 (noting that the selected candidate "[w]as well-prepared for the interview with specific objectives for turning around the region, was enthusiastic and demonstrated confidence.") Miller had managerial experience in the department. (See Lovett. Dep. 156: 2-5.) She was enthusiastic and energetic in her interview, demonstrating leadership and initiative. Plaintiff's answers to certain interview questions appeared to indicate that he disliked preparing reports, budgeting, and performing other administrative tasks. (See Henning Dep. 98: 12-99: 3.); see also Baxter, 533 F.3d at 392 (the unsuccessful applicant "did not interview well, . . . demonstrated an inflexible management style, and did not present a persuasive plan for turning around the region."). MLGW decided that Miller was the more qualified candidate, and "[h]iring a more qualified candidate certainly suffices as a legitimate, nondiscriminatory rationale for denying" a promotion. Williams v. Columbus Metro. Hous. Auth., 90 F. App'x 870, 873 (6th Cir. 2004).

16

### 3.   MLGW's Reason Is Not Pretextual

Because Defendant has proffered a legitimate, nondiscriminatory reason for failing to promote him, Plaintiff must rebut that reason by offering evidence of pretext. Bartlett v. Gates, 421 Fed. App'x 485, 490 (6th Cir. 2010) (citing Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006)); see also Chen, 580 F.3d at 400 (citation omitted).

"To prove pretext, the plaintiff must introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that [discriminatory] animus was the true motivation driving the employer's determination." Myers v. U.S. Cellular Corp., 257 F. App'x 947, 954 (6th Cir. 2007) (quoting Barnes v. United Parcel Serv., 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005)) (alteration in original). A plaintiff must demonstrate pretext in at least one of three ways:

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

_Kocsis v. Multi-Care Mgmt., Inc._, 97 F.3d 876, 883 (6th Cir. 1996) (citation omitted).   A jury must be able reasonably to reject an employer's explanation.  _Id._ (citation omitted).

### a. The Basis in Fact for MLGW's Legitimate, Non-discriminatory Employment Justification

To show that MLGW's reason for failing to promote him has no basis in fact, Plaintiff argues that his Bachelor's Degree makes him more qualified than Miller, that he was more qualified for a completely unrelated job, and that he had ten years of experience "in the job that he was competing for as supervisor and Nancy Miller did not."[7]  (Pl.'s Mem. 20.)   Plaintiff's arguments are not well taken.

### 1) Plaintiff's Bachelor's Degree

As evidence that his qualifications were superior to Miller's, Plaintiff offers his Bachelor's Degree from Christian Brothers University.   His degree does not undermine the factual basis of MLGW's proffered reason.

Plaintiff did not receive his degree until May 12, 2006, two months after Plaintiff had unsuccessfully pursued the Supervisor, Stores position.   (_See_ Diploma; _see also_ Def.'s Statement ¶¶ 30, 37.)  When MLGW Human Resources determined the relative fitness of each job applicant, Plaintiff's work

---

[7] Plaintiff does not specifically state the grounds on which he attacks MLGW's legitimate, nondiscriminatory reason.  The Court interprets Plaintiff's arguments as attempts to show that MLGW's reason has no basis in fact or did not actually motivate the employment decision.  _See_ Kocsis, 97 F.3d at 883.

history, not his Bachelor's Degree, qualified him for further consideration. (See Henning Dep. 60:19-61:3) (Plaintiff was qualified for the Supervisor, Stores position based on his journeyman-level experience).

Even if Plaintiff had successfully completed his degree by the job posting date, that fact alone would not be sufficient to survive summary judgment. "It is well-settled . . . that management retains the right to choose from among qualified candidates, particularly in selecting management-level employees, as long as the reasons for its choices are not discriminatory; it is not the role of the court to question a business's choice among qualified candidates." Brennan v. Tractor Supply Co., 237 Fed. App'x 9, 23 (6th Cir. 2007). The Job Announcement made clear that a Bachelor's Degree and work experience were given equal weight in determining an applicant's qualifications. (See Def.'s Statement ¶ 15; see also Job Announcement.) Miller's more than 20 years "of closely related work experience fulfill the work experience substitute for the educational requirements." Brown v. City of Cleveland, 294 Fed App'x 226, 232 (6th Cir. 2008); see also Ex. E, ECF No. 29-7. Plaintiff's Bachelor's Degree is insufficient to show pretext.

### 2)   Assistant Manager of Stores

As additional evidence of pretext, Plaintiff notes Miller's inferior qualifications for Assistant Manager of Stores, a job

one level higher than supervisor, because she lacks a college degree. (See Pl.'s Mem. 20.) The Assistant Manager of Stores position has no relevance to this case. Neither candidate interviewed for Assistant Manager, and there is no evidence in the record to suggest that the position had any bearing on the employment decision in this case. It is undisputed that Miller lacked a college degree. A college degree was one of two ways to qualify for the Supervisor, Stores position. Plaintiff's juxtaposition of his college education and Miller's work experience for an irrelevant job posting is "self-serving [and] carr[ies] no evidentiary value when attempting to prove racial discrimination through the McDonnell-Douglas analysis. Nor do[es] [it] sufficiently raise a genuine issue of material fact to defeat summary judgment." Armstrong v. City of Milwaukee, 204 F. App'x 559, 563 (7th Cir. 2006) (citations omitted).

### 3)   **Plaintiff's Work Experience in Stores**

Plaintiff next argues that he has more than ten years experience "in the job that he was competing for as supervisor and Nancy Miller did not." (Pl.'s Mem. 20.) This fact does not create a genuine issue of material fact on the issue of pretext; racial animus must be shown. Geiger v. Tower Auto., 579 F.3d 614, 625 (6th Cir. 2009) (stating that an employer's motivations must be evaluated). When comparing qualifications, Plaintiff's credentials must be "so significantly better" that no reasonable

20

employer would have chosen Miller. <u>Bender v. Hecht's Dep't Stores</u>, 455 F.3d 612, 627 (6th Cir. 2006). Although Plaintiff served as a supervisor for more than a decade, Miller had more than twenty years experience in the Stores division when she applied for the supervisor position. (<u>See</u> Ex. E, ECF No. 29-7) ("Miller Application").) Plaintiff's decade of experience as a supervisor does not make him "so significantly" better qualified as to survive summary judgment.

### b. MLGW's Proffered Reason Actually Motivated Its Decision

Plaintiff also argues that MLGW's proffered reason for failing to promote him did not actually motivate that decision. Plaintiff attempts to create a dispute of material fact by attacking the interview process as "inherently subjective and thus easy to manipulate [to] mask the interviewer's true reasons for making the promotion decision." <u>See Kocsis</u>, 97 F.3d at 883; <u>see also</u> Pl.'s Mem. 20.

A plaintiff arguing this prong "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate" the employer's conduct, but "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." <u>Manzer v. Diamond Shamrock Che Co.</u>, 29 F.3d 1078,

1084 (6th Cir. 1994) (emphasis in original).  Although Plaintiff advances several assertions to impugn the interview process, he does not cite any relevant authority or provide specific evidence that would demonstrate pretext.  The Plaintiff's arguments can therefore be dismissed in turn.

### 1) Collusion Between Henning and Lovett

Plaintiff suggests that Lovett and Henning colluded to reduce Plaintiff's scores after the completion of the interviews.  (Pl.'s Mem. 20.)  Plaintiff further argues that Lovett changed her interview notes to give Plaintiff a lower score on two categories, and that—but for those alterations—his scores would have exceeded Miller's.  (Id.)

The record supports a different conclusion.  "The employer's motivation, not the applicant's perceptions, or even an objective assessment [] of what qualifications are required for a particular position, is key to the discrimination inquiry."  Geiger, 579 F.3d at 625 (internal quotation marks omitted).  Plaintiff identifies no "concrete evidence" of collusion between Henning and Lovett, instead attacking the entire process as a "sham for discrimination."  See Interoyal, 889 F.2d at 111; see also Pl.'s Resp. 21.  Although Lovett altered her interview notes to give Plaintiff a lower score in two areas, (see Hawkins Evaluation 3), Henning increased Plaintiff's scores in the areas of "Problem Solving" and

22

"Motivation" from 10 to a total of 20 in each category. (See Hawkins Evaluation 2.) That Henning and Miller collaborated after both applicants' interviews does not, without specific evidence, create a dispute of material fact.

Plaintiff's math is also incorrect. Plaintiff contends that, but for these interview alterations, his scores would have exceeded Miller's. (Pl.'s Mem. 20.) It is undisputed, however, that Miller received 400 of 420 points from both Henning and Lovett. (See Miller Evaluation 1; Miller Evaluation 2.) It is also undisputed that Plaintiff's interview scores ranged from 260 to 280, and that any and all alterations to Plaintiff's scores did not exceed 20 points. (See Hawkins Evaluation 2; Hawkins Evaluation 1.) Therefore, even after adding the 20 points to Plaintiff's interview scores, his overall total would not have exceeded 300 points.

### 2) Plaintiff's Qualifications Argument

Plaintiff contends that his credentials were superior to Miller's, and if they were not superior, they were at least equal. (See Pl.'s Mem. 20 ("Hawkins['] qualifications are superior to Millers['].").) A plaintiff's "perception of his competence, and the incompetence of those competing against him, is irrelevant." Brennan, 237 Fed. App'x at 23 (citing Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987). In a case where "there is little or no other probative evidence of

discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006).

"[T]he probative value of qualifications evidence in terms of demonstrating pretext must be balanced against the principles that employers are generally 'free to choose among qualified candidates.'" Id. at 626 (quoting Wren, 808 F.2d at 502). Whether qualifications evidence will be "sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." Id.

Nancy Miller had over twenty years experience in the Stores division when she applied. (See Miller Application.) Miller was selected for her initiative, her ability to develop and motivate employees, her proven conflict resolution skills, her demonstrated ability to follow through on assigned responsibilities, and her ability to execute operational and personnel policies. (See Nancy Miller Dep. Interview Rec.) Those facts establish that Miller was qualified for the Supervisor, Stores position; therefore, MLGW was "free" to select her. See Bender, 455 F.3d at 626.

### 3) Culture of Discrimination

24

Plaintiff attempts to establish that MLGW has a "culture of discrimination." (See Pl.'s Mem. 23.) He argues that MLGW has "a history of developing any excuse to non select [sic] the most qualified minority person to the benefit of non minorities." (See id. at 24.)

Plaintiff contends, without providing concrete evidence, that Lovett has a "history of discriminating against blacks." (See id. at 1.) Plaintiff asserts that Lovett was aware that some employees complained that she was racist. (See id. at 4.) Plaintiff does not provide the names of those accusers, the circumstances surrounding the accusations, or the time during which Lovett heard the rumors. Plaintiff fails to provide a "clear connection between the[se] general statements of racism" and MLGW's decision not to promote him. Thomas v. Union Inst., 98 Fed. App'x 462, 465 (6th Cir. 2004). Because "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial" to support a finding of racism, Plaintiff's assertion that Lovett is a racist, or was reputed to be one, does not create a dispute of material fact to survive summary judgment. See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998); see also Thomas, 98 Fed. App'x at 465 (finding that statements offered to prove that defendants were racist were inadmissible).

Plaintiff next asserts that Lovett created a "culture of discrimination" by failing to promote an African-American to a position higher than Foreman before 2007.  (See Pl.'s Resp. 4.) Plaintiff fails to support that assertion with relevant facts, making his offer of proof incomplete.  See Farber v. Massillon Bd. Of Ed., 917 F.2d 1391, 1397 (6th Cir. 1990) (rejecting a claim of discrimination because the plaintiff proffered insufficient evidence).  Without comprehensive data showing, at a minimum, "the total number of [supervisor-level] and above positions" at MLGW and the total number of African-Americans who applied for those positions, in addition to the raw number of African-American supervisors, the assertion that Lovell failed to promote an African-American before 2007 is insufficient to support an inference of discrimination.  See Martinez v. Ltd. Brands, Inc, 200 Fed. App'x 571, 575 (6th Cir. 2006) (rejecting plaintiff's "statistical evidence" because he provided only "anecdotal evidence" that there were two Hispanics at the director level).

Plaintiff ignores Lovett's personal invitations to African-American employees to become part of her succession plan for supervisors, which each proposed candidate declined.  (See Lovett Trans. 205:21-207:1, ECF No. 40-2.)  Lovett testified that she asked at least two African-American employees, Sam Carter and Brenda Turner, to become part of her succession plan

when Plaintiff applied for the Supervisor, Stores position. (Id. at 211:11-22.) That evidence undermines Plaintiff's claim that Lovett contributed to a "culture of discrimination" by failing to promote African-American employees.

Plaintiff contends MLGW's failure to promote him in 2001 is evidence of its "culture of discrimination." (Pl.'s Resp. 4.) That argument is not well-taken. Plaintiff's 2001 application for Supervisor, which occurred more than four years before his application in this action, is not germane. Plaintiff never complained that he was discriminated against in 2001 and did not file a charge with the EEOC. Insofar as Plaintiff seeks to assert a claim based on conduct in 2001, that claim would be time-barred. See Tartt v. City of Clarksville, 149 Fed App'x 456, 461 (6th Cir. 2005) (holding that a plaintiff's failure to file an EEOC charge within 300 days of the alleged discrimination rendered the claims untimely).

### c. EEOC Determination of Probable Cause

Plaintiff relies on the EEOC's determination of probable cause to establish a genuine issue of material fact. His reliance is misplaced.

The district court has the discretion to decide whether "to accept the EEOC's final investigation report" as evidence. Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997). Although an EEOC probable cause determination is "more

tentative in its conclusions," and thus less prejudicial to a defendant, "the district court has broad discretion to determine matters of relevance." See id.; see also Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 587 (6th Cir. 1994).

The EEOC's probable cause determination states that "record evidence disclosed that [Plaintiff's] qualifications were superior compared to the white successful candidate's" based on Plaintiff's twenty years of work experience compared to Miller's ten. (See Ex. M, ECF No. 34-20.) It is undisputed that Plaintiff had more work experience than Miller. Disagreements over candidate qualifications, without additional evidence of an employer's motivations, are insufficient to prove racial discrimination. See Martinez, 200 Fed. App'x at 575 (noting that mere determinations of qualifications are insufficient to prove pretext). The EEOC's determination does not create a dispute of material fact that can survive summary judgment.

### d. Plaintiff's Reliance on Risch

Plaintiff contends that the holding in Risch v. Royal Oak Police Dept., 581 F.3d 383 (6th Cir. 2009), warrants a denial of summary judgment. Plaintiff's interpretation of Risch is overly broad.

In Risch, the Sixth Circuit reversed the district court's grant of summary judgment, and held that a defendant's proffered legitimate, nondiscriminatory reason was pretextual. The

Department's reason for failing to promote Risch, that it promoted superior applicants who outscored Risch on performance reviews and examinations, did not align with the facts. <u>Id.</u> at 391. Risch had been denied promotions on several occasions in favor of Caucasian males who had lower composite scores on the Department's employment matrix. <u>See id.</u> at 392.

The plaintiff in <u>Risch</u> presented specific evidence showing that male officers "frequently made degrading comments regarding the capabilities of female officers, express[ing] the view that female officers would never be promoted to command positions." <u>Id.</u> Risch also provided specific testimony showing that supervisors "gave all the plum assignments" to males. <u>Id.</u> at 393. On these facts, the Sixth Circuit found a "discriminatory atmosphere" in which men were given preferential treatment. <u>Id</u>

The facts warranting reversal in <u>Risch</u> are not in the instant case. Unlike the plaintiff in <u>Risch</u>, Plaintiff did not score higher than Miller on the employment matrix. The plaintiff in <u>Risch</u> also provided evidence that specifically identified pervasive derogatory and discriminatory behavior throughout the workplace. Plaintiff here has provided "rumor[s], conclusory allegations, and subjective beliefs." <u>Giles v. Norman Noble, Inc.</u>, Fed. App'x 890, 895 (6th Cir. 2004). For those reasons, <u>Risch</u> does not control, and Plaintiff is not entitled to summary judgment.

### e. Plaintiff's Reliance on <u>Baxter</u>

Plaintiff contends that <u>Baxter</u> warrants a denial of summary judgment because the evidence supporting pretext in <u>Baxter</u> is similar to the evidence here. (Pl.'s Mem. 19-20.) Plaintiff's reliance is misplaced. In <u>Baxter</u>, the Sixth Circuit reversed a district court's entry of summary judgment because there was specific evidence of pretext. 533 F.3d at 394. The plaintiff, an African-American male with several years of sales experience, was denied a promotion in favor of a Caucasian female who possessed "no prior sales experience as a Baxter sales representative." <u>Id.</u> at 395.

The plaintiff's interview created an issue of material fact on the issue of pretext. Although Baxter supervisors described the plaintiff as "aggressive" during his interview, the Sixth Circuit found that the plaintiff's behavior stemmed from "questions about Baxter's lack of workforce diversity, particularly within its management positions." <u>Id.</u> Plaintiff also presented specific evidence "showing discriminatory animus toward African-Americans on the part" of Baxter supervisors. <u>Id.</u> at 385. Management admitted that "no one wants to work with a black man" during a workplace diversity discussion, and supervisors were known to refer to African-American employees as "that black [person]" instead of by name or title. <u>Id.</u>

The plaintiff in _Baxter_ also had significant prior management experience from a previous sales position with Johnson & Johnson and an MBA, whereas the selected female had no experience in managing sales. _Id._ at 394. Baxter selected the Caucasian candidate over the plaintiff, although the successful candidate "admitted that she found it difficult to confront subordinates while in a managerial role." _Id._ at 395.

_Baxter_ is distinguishable. The successful candidate in _Baxter_ had no sales experience before her promotion. Miller had twenty years of experience in the Stores division. Miller was also the acting Supervisor throughout the interview process, and Lovett observed Miller's success in that position firsthand. Plaintiff's Bachelor's Degree is not analogous to the plaintiff's MBA in _Baxter_. The Supervisor, Stores position required a degree or work experience, and a Bachelor's Degree does not create an issue of material fact. Even if it did, Plaintiff did not graduate until two months after Miller's selection.

The "culture of discrimination" in _Baxter_ is not present in this case. Plaintiff presents unsubstantiated allegations of racism, whereas the plaintiff in _Baxter_ presented concrete evidence of derogatory comments. Rumors are insufficient to survive summary judgment.

Plaintiff cannot demonstrate by a preponderance of the evidence that MLGW's legitimate, non-discriminatory reason has no basis in fact, that MLGW's proffered reason did not actually motivate its actions, or that MLGW's reason was insufficient to motivate its decision to hire another.  See Kocsis, 97 F.3d at 883 (citation omitted).  Therefore, Plaintiff has not raised a genuine issue of material fact on the issue of pretext, and his claim cannot survive MLGW's Motion for Summary Judgment.  See id.

**V.  Conclusion**

For the foregoing reasons, the Court GRANTS MLGW's Motion for Summary Judgment.

So ordered this 1st day of December, 2011.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR
UNITED STATES DISTRICT JUDGE